IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RASHANN L. FONTENOT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-1245 |
| | § | |
| HUGHES MRO, LTD., *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment

("Motion") [Doc. # 16] filed by Defendants Hughes MRO, Ltd., Hughes GP &

Management, Inc., and Hughes Supply, Inc. (collectively, "Hughes").  Plaintiff

Rashann L. Fontenot filed a Response [Doc. # 21], to which Hughes filed a Reply

[Doc. # 24].  Based on the Court's review of the record and the application of

governing legal authorities, the Court **grants** summary judgment that any entitlement

Plaintiff may have to back pay terminated no later than March 2007, and **denies** the

Motion for Summary Judgment in all other respects.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In 1991, Plaintiff began working for Century A/C, a company that provided air

conditioning services to apartment complexes and other multi-family residences in the

Houston, Texas area.  In late 1997, Plaintiff transferred to Century Maintenance Supply

Case 4:06-cv-01245   Document 26   Filed in TXSD on 09/07/07   Page 2 of 18

("CMS"), a sister company of Century A/C.  At CMS, Plaintiff was supervised by Billy Schreiner from late 1997 until 2000.  Beginning in 2000, Plaintiff was supervised by Theresa Lamar.

At the end of 2003, Hughes acquired CMS.  Ms. Lamar (then Ms. Tollett) left the company and Schreiner again became Plaintiff's supervisor.

Plaintiff alleges that Schreiner "had an open and notorious bias against women in general and female employees in particular."  Plaintiff states in her Affidavit that Schreiner often made comments such as "The world would be a better place without so many women" and "A woman's place should be at home, barefoot and pregnant." *See* Fontenot Affidavit, Exh. 1 to Response, ¶ 5.  Plaintiff alleges that Schreiner discriminated against her on the basis of her sex and created a hostile work environment.[1]

Plaintiff resigned her employment at Hughes effective February 28, 2005. Plaintiff claims she resigned because she could no longer tolerate the sex-based discrimination and harassment by Schreiner and because her complaints to members of the Hughes Human Resources department, both locally and at corporate headquarters, failed to remedy the problem.

---

[1]     Plaintiff does not allege that Schreiner created a hostile work environment by harassing her sexually.  Instead, Plaintiff alleges that Schreiner harassed her because she is a woman.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and, after receiving a Notice of Right to Sue, filed this lawsuit. Plaintiff alleges that she was subjected to sex-based discrimination and harassment, and that she was retaliated against after she complained to Human Resources personnel. Plaintiff alleges that her resignation constitutes a constructive discharge.

After discovery, Hughes moved for summary judgment. The motion has been fully briefed and is now ripe for decision.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *de la O v. Housing Auth.*, 417 F.3d 495, 501 (5th Cir. 2005). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. Rule 56(e). *Id.* The court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 416 (5th Cir. 2006).

III.   **SEX DISCRIMINATION/ HOSTILE WORK ENVIRONMENT**

Plaintiff alleges that she was discriminated against on the basis of her sex to such an extent that it created a hostile work environment and that she was eventually constructively discharged.

A.   **Sex Discrimination**

An employer is prohibited under Title VII from discharging or otherwise discriminating against an individual because of that individual's sex. *See* 42 U.S.C. § 2000e-2(a)(1); *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Where the plaintiff presents no direct evidence of discrimination,[2] she must first create a presumption of intentional discrimination by establishing a *prima facie* case. *Id.* To do so, the plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *Id.* It is undisputed that Plaintiff, as a female, is a member of a protected class. She has presented evidence that she was not only qualified for her position with Hughes, but that she was one of the top producing salespeople for the company. She has presented evidence that she suffered an adverse employment action. Specifically,

---

[2]   In this case, Plaintiff has presented evidence of comments by Schreiner which constitute some direct evidence of his disrespect for women in general and his animus toward female employees in particular.

Plaintiff has presented evidence that in 2003 accounts were transferred from her and from male salespeople to a new salesperson.  She has also presented evidence that when the new salesman left the company in 2004, the accounts from male salespeople were returned to them while her accounts were not.[3]  Plaintiff has also presented evidence, as is discussed more fully below, that she was constructively discharged from her position at Hughes, and that she was replaced by a male.[4]  Plaintiff has presented evidence to raise a genuine issue of material fact regarding her *prima facie* case of sex discrimination.

"The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions."  *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000)).  Defendant in this case argues that Plaintiff's accounts were not returned to her in 2004 because there were numerous complaints about her from clients.  Defendant denies that Plaintiff was constructively discharged.

The burden then shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or

---

[3]    Defendant argues that Plaintiff's EEOC charge was untimely because the accounts were removed from Plaintiff more than 300 days before she filed her charge of discrimination. Plaintiff's complaint, however, is that in 2004 – within the 300-day period before the EEOC charge was filed – the accounts were subsequently returned to male employees but not to her.

[4]    Plaintiff has stated in her affidavit that she was replaced by a male.  Defendant has presented evidence through Schreiner's affidavit that the position was first offered to a female who turned down the offer.

(2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's sex. *Id.* Plaintiff concedes that there were some complaints about her from property managers, but notes that each complaint, documented by Schreiner, could have been explained if it had been brought to her attention. For example, Schreiner reported that the manager at a property known as Bentworth complained that Plaintiff was not calling. Plaintiff has presented evidence that the account at Bentworth was on a credit hold and that she was not allowed to sell to them. As to two other property managers that Schreiner reported complained about Plaintiff not calling them, Plaintiff explained that she dealt with other personnel on the property. Plaintiff has presented evidence that, viewed in the light most favorable to Plaintiff, raises a genuine issue of material fact regarding whether Defendant's explanation was false. Plaintiff has also presented evidence from which a reasonable juror could find that another motivating factor in her treatment at Hughes was Schreiner's antipathy toward female employees.[5] As a result, Defendant is not entitled

---

[5]     Defendant, citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), raises the "same actor" defense, noting that Schreiner agreed to allow Plaintiff to transfer from Century A/C to CMS. The "same actor" defense applies where employee is hired and later fired by the same individual and the termination occurs within a relatively short time after the hiring. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991), adopted by the Fifth Circuit in *Brown*. The defense is enhanced when the decisionmaker is a member of the same protected class and, even if it applies, it does not rule out the possibility that an employee can prove discrimination. *See Brown*, 82 F.3d at 658. In this case, Schreiner did not hire Plaintiff, he is not a member of the same protected class, and he approved her transfer in 1997, approximately eight years before she resigned. Defendant is not entitled to summary judgment on Plaintiff's sex discrimination claim based on the "same actor" defense.

to summary judgment on Plaintiff's sex discrimination claim.[6]

### B.   Hostile Work Environment/Constructive Discharge

Plaintiff complains that she was subjected to a hostile work environment because she is a woman, and that the environment was so hostile and abusive that she was ultimately compelled to resign.  "Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *McCoy v. City of Shreveport*, 492 F.3d 551, 558 (5th Cir. 2007) (quoting *Septimus v. Univ. of Houston,* 399 F.3d 601, 611 (5th Cir. 2005)).

An employee is constructively discharged when "the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *Id.* at 557.  The constructive discharge inquiry is an objective one, asking "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign."  *Id.* One of the factors to be considered in determining whether an employee's resignation constitutes a constructive discharge is the presence and extent of "badgering,

---

[6]    Defendant argues that it is entitled to summary judgment on Plaintiff's sex discrimination claim because she could not during her deposition list the accounts that were transferred to the new employee and not returned to her when he left the company.  Plaintiff's inability to name the accounts may be important to the jury's assessment of her credibility or its calculation of her damages, but it does not justify entry of summary judgment in Defendant's favor.

harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* Harassment that is reported but unresolved may create a hostile work environment and cause a constructive discharge only if it is "severe or pervasive" and "create[s] an environment that a reasonable person would find hostile or abusive." *Id.* at 558.

In this case, Plaintiff has presented evidence that Schreiner has a hostile attitude toward females, particularly female employees, and that he freely and frequently expressed those attitudes in the workplace. Plaintiff has presented evidence that, during a training video regarding sexual harassment, Schreiner commented that they would not have to "worry about this" if there were only men working for the company. Plaintiff has presented evidence that Schreiner referred to her as a "bitch" and as "no-ass-at-all." Plaintiff's evidence indicates that Schreiner used the "no-ass-at-all" nickname so regularly and openly that other employees began using the term when referring to Plaintiff. Plaintiff has presented evidence that Schreiner, having heard that Plaintiff was meeting at a restaurant during lunchtime to discuss a new internet-based business, followed Plaintiff to the restaurant. On another occasion, Plaintiff had her husband call to report that Plaintiff would not be at work because her mother had a medical emergency and Plaintiff had gone to be with her mother. Schreiner placed a

written reprimand in Plaintiff's personnel file stating that this conduct violated the company policy requiring an *employee* to call if she would not be at work.

Plaintiff has also presented evidence that Schreiner commented on more than one occasion that he was trying to get rid of Plaintiff. Indeed, Plaintiff's evidence indicates that Schreiner advised a male employee, in an attempt to dissuade him from resigning, that Schreiner was going to "get rid of Rashann" and would then give her accounts to the male employee.

Plaintiff has presented evidence that Schreiner harbored a strong dislike for female employees and that his sex-based harassment was sufficiently severe and pervasive that it created a hostile work environment. Plaintiff's evidence raises a genuine issue of material fact on the constructive discharge issue such that the Court cannot conclude as a matter of law that a reasonable person would not, under the circumstances presented by Plaintiff, have felt compelled to resign.[7] This is particularly true in light of Plaintiff's evidence that her complaints to and requests for assistance from personnel in the Hughes Human Resources Department, both in Houston and in the company's corporate headquarters, failed to address adequately and to remedy the

---

[7]     Defendant, citing *Boze v. Bransetter*, 912 F.2d 801 (5th Cir. 1999), argues that Plaintiff's constructive discharge claim fails as a matter of law because she did not file an EEOC charge and "allow the legal process to work" *before* she resigned. Contrary to Defendant's argument, neither *Boze* nor any other Fifth Circuit authority requires an employee to file an EEOC charge and to remain in a work environment that is hostile and abusive until the EEOC process is complete.

allegedly sex-based discrimination and harassment.[8]  As a result, Defendant is not entitled to summary judgment on Plaintiff's claims that she was subjected to a hostile work environment and that she was constructively discharged.

## IV.  RETALIATION CLAIM

### A.  *Prima Facie* **Case of Retaliation**

Plaintiff alleges that Defendant retaliated against her because she engaged in protected activity by complaining of sex-based discrimination and harassment.  To establish a *prima facie* case for retaliation, a plaintiff must present evidence that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and adverse employment action. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

The first element of a *prima facie* case of unlawful retaliation requires the plaintiff to show that she engaged in activity protected by Title VII.  An employee engages in protected activity by either (1) opposing any unlawful employment practice under Title VII; or (2) filing a charge of discrimination or otherwise participating in any manner in a Title VII matter.  *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 755

---

[8]     Defendant argues that it is entitled to summary judgment because Plaintiff did not take advantage of corrective opportunities that were available to her.  *See* Motion, p. 12. Plaintiff's evidence, however, is clearly to the contrary.  Plaintiff has presented evidence that she complained in writing to the local Human Resources Department at Hughes in August 2004 and to the Human Resources Manager at Hughes corporate headquarters in November 2004.

(5th Cir. 2005).   It is undisputed that Plaintiff wrote to the Human Resources Department at Hughes on August 19, 2004.   *See* August 19 Memo, Ex. 6 to Motion. Defendant argues, however, that the August 19 Memo does not constitute protected activity because it does not clearly complain of discrimination and harassment that was based on Plaintiff's sex.   While it is true that Plaintiff did not specifically link each individual complaint in the August 19 Memo to her sex, in the very first paragraph she referred to the "male dominated nature of this industry."   She also complained that Schreiner tried to dissuade a male employee from resigning by telling him that he was trying to "get rid of Rashann" and Schreiner would then give the male employee Plaintiff's accounts.   Plaintiff noted in the August 19 Memo that CMS understood the "benefits of having female salespeople in a male dominated business," but states that Schreiner "was not pleased about working with us [two female salespeople]."   Plaintiff specifically identified sexually degrading behavior by Schreiner in a section clearly titled "Sexually degrading."   She described Schreiner's references to her as "no-ass-at-all" and his other degrading and inappropriate comments.   She described harassing behavior, including being rejected for special projects and position for which she was qualified.   A reasonable factfinder could easily determine that the August 19 Memo constituted Plaintiff's report and opposition to sex-based discrimination and harassment by Schreiner.

Plaintiff must also present evidence that she suffered an adverse employment action.  In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern & Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S. Ct. 2405, 2415 (2006); *Pryor v. Wolfe*, 196 F. App'x 260, 263 (5th Cir. Aug. 22, 2006).  This requires a showing that the challenged conduct "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations and citation omitted). Plaintiff has alleged and presented evidence that, after she sent the August 19 Memo, Schreiner berated and harassed her until she was forced to resign.  A reasonable juror could find that such harassment, ultimately resulting in the employee's resignation, is materially adverse and would dissuade a reasonable worker from complaining of sex-based discrimination and harassment.[9]

The third element of Plaintiff's *prima facie* case of retaliation is the existence of a causal link between the protected activity and the adverse employment action.  The burden of establishing this "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but-for" causation required for the determination of the ultimate issue of retaliation.  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112,

---

[9]   The second element of a prima facie case of retaliation can be satisfied with evidence that the employee was subjected to severe or pervasive retaliatory harassment by her supervisor.  *See Michael v. Caterpillar Financial Servs. Corp.*, __ F.3d __, 2007 WL 2176220 * 8 (6th Cir. July 31, 2007).

1122 n.8 (5th Cir. 1998).  In evaluating the "causal link" element, the Fifth Circuit focuses on three factors: "(1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination." *Bacon v. EDS*, 219 F. App'x 355, 357 (5th Cir. Feb. 21, 2007) (citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)).  Plaintiff has presented evidence that she was one of the top producers in the Houston office and one of the top 3% of producers nationwide.  Although Plaintiff had an extensive disciplinary record, it was created exclusively by Schreiner.  During the four year period between 2000 and 2003 when Plaintiff worked for a different supervisor, Plaintiff received no reprimands or other complaints about her work except for two registered by Schreiner.  Plaintiff has presented evidence that she felt compelled to resign less than six months after sending the August 19 Memo.  Plaintiff's evidence raises a genuine issue of material fact regarding the existence of a causal link between the August 19 Memo and her allegedly constructive discharge.

Plaintiff has presented evidence to raise a genuine issue of material fact regarding a *prima facie* case of retaliation.

### B.     Non-Discriminatory Reason and Pretext

If  Plaintiff  successfully  establishes  a  *prima facie*  case,  the  burden  shifts  to
Defendant  to  articulate  a  legitimate,  nondiscriminatory  reason  for  the  allegedly
retaliatory conduct, and then back to Plaintiff to present evidence that raises a genuine
issue of material fact that the proffered reasons are pretextual. *See Baker*, 430 F.3d at
754-55.  At this point, Plaintiff is required to show that she would not have suffered the
adverse employment action "but for" the protected activity.  *See Strong v. University
Health  Care  Sys.,*  482  F. 3d  802,  806  (5th  Cir. 2007).   A  factfinder  may  infer  the
ultimate fact of retaliation if they find that Defendant's "proffered explanation is false
or 'unworthy of credence.'" *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 358
(5th Cir. June 19, 2006) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).
"No further evidence of discriminatory animus is required because once the employer's
justification has been eliminated, discrimination [or retaliation] may well be the most
likely alternative explanation.'"  *Id*. (quoting *Reeves v. Sanderson Plumbing Prods.,
Inc*., 530 U.S. 133, 147 (2000)).

As was discussed more fully in connection with Plaintiff's discrimination and
harassment claims, Plaintiff has presented evidence that raises a genuine issue of
material fact regarding whether her resignation constituted a constructive discharge and
whether the alleged harassment leading to her resignation was, at least in part, in

retaliation for the August 19 Memo.  Defendant's Motion for Summary Judgment on the retaliation claim is denied.

## V.    BACK PAY

A plaintiff seeking back pay must have mitigated her damages.  *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1045 (5th Cir. 1998); *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990)).  "[T]he burden is on the employer to prove failure to mitigate." *West*, 330 F.3d at 393 (citing *Migis,* 135 F.3d at 1045).  "A plaintiff may not simply abandon his job search and continue to recover back pay."  *Id.* (citing *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1468 (5th Cir. 1989)).

In February 2005, shortly after her discharge from Hughes, Plaintiff went to work for AOL/Time Warner.  She worked there until discharged on April 29, 2005. In July 2005, she went to work for Technology Support, Inc.  She was discharged in February 2006.  In March 2007, Plaintiff stopped seeking employment and started real estate school.

Defendant seeks summary judgment that Plaintiff is not entitled to back pay because she did not diligently seek comparable employment.  Plaintiff has presented evidence that she sought similar employment by checking for openings through the Houston Apartment Association on a regular basis.  This raises a genuine issue of

material fact regarding whether Plaintiff used reasonable diligence to obtain substantially similar employment in order to mitigate her damages.

Defendant seeks summary judgment that Plaintiff is not entitled to back pay after her employment with AOL/Time Warner was terminated on April 29, 2005.  To recover back pay, a plaintiff must "use reasonable diligence in maintaining that substantially similar employment." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996).  In *Patterson*, the plaintiff "act[ed] in such a manner that caused his involuntary termination" from the job he obtained after being discharged from the defendant.  In this case, Defendant argues that Plaintiff was discharged by AOL/Time Warner for poor performance.  Plaintiff counters that she was discharged because her computer skills proved to be inadequate.  Being terminated because one proves unqualified for a subsequent job is potentially different from being fired for wrongful behavior.  The reason AOL/Time Warner terminated Plaintiff's employment – and whether Plaintiff engaged in misconduct that caused her discharge – is in dispute.  As a result, Defendant is not entitled to summary judgment that Plaintiff's entitlement to back pay ended on April 29, 2005.[10]

---

[10]    Although the Court denies Defendant's Motion for Summary Judgment on this issue, the fact finder could ultimately determine that Plaintiff's entitlement to back pay terminated when she was discharged by AOL/Time Warner.  Alternatively, the fact finder could determine that Plaintiff's entitlement to back pay terminated in February 2006 when she was discharged by Technology Support, Inc.

Although Plaintiff believes that she could seek and obtain employment with a salary of at least $50,000.00 per year, Plaintiff stopped seeking employment at the beginning of March 2007 to devote all her energies to real estate school.  When Plaintiff decided to return to school rather than continue seeking substantially similar employment, her entitlement to back pay ended.  *See West*, 330 F.3d at 393.  As a result, Defendant is entitled to summary judgment that any entitlement Plaintiff may have had to back pay terminated no later than March 2007.

## VI.   CONCLUSION AND ORDER

On a motion for summary judgment, the Court construes the facts and considers the evidence in the light most favorable to the nonmoving party.  In this case, Plaintiff has presented evidence that raises a genuine issue of material fact supporting each of her claims.  On the back pay issue, Defendant is entitled to summary judgment that any entitlement Plaintiff would otherwise have to receive back pay terminated no later than when she started real estate school in March 2007.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 16] is **GRANTED** as to any entitlement to back pay ending no later than March 2007 and is **DENIED** in all other respects.

The case remains scheduled for docket call on **October 19, 2007, at 4:00 p.m.**, and the parties are reminded that they are required to engage in mediation prior to docket call.

SIGNED at Houston, Texas, this **7th** day of **September, 200**7.

Nancy F. Atlas
United States District Judge